UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERWINTHANSHEA B., <br> Plaintiff, <br> v. <br> NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, <br> Defendant. | Case No. ED CV 17-871-SP <br><br> MEMORANDUM OPINION AND ORDER |

## I.

## **INTRODUCTION**

On May 4, 2017, plaintiff Erwinthanshea B. filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of supplemental security income ("SSI"). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one issue for decision: whether the Administrative Law Judge ("ALJ") erred at step two in determining that plaintiff does not suffer from a severe mental impairment. Plaintiff's Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 4-11; *see* Defendant's Memorandum in Support of

Defendant's Answer ("D. Mem.") at 1-6.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that the ALJ did not err at step two. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.
## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff has a twelfth grade education and was thirty-five years old on his alleged disability onset date, December 1, 2011. AR at 56, 59. He has past work as a car detailer, a janitor, and prep mechanic. *Id.* at 143.

On August 29, 2013, plaintiff filed an application for SSI due to manic depressive disorder, anti-social disorder, and mood disorder. *Id.* at 56. The Commissioner denied plaintiff's application initially and upon reconsideration, after which plaintiff filed a request for a hearing. *Id.* at 27-33.

On November 17, 2015, plaintiff appeared without counsel and testified at a hearing before the ALJ in Moreno Valley, California. *Id.* at 41-54. On December 8, 2015, the ALJ denied plaintiff's claim for benefits. *Id.* at 27-33.

Applying the five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since August 29, 2013, the date of plaintiff's SSI application. *Id.* at 29.

At step two, the ALJ found plaintiff suffered from affective mood disorder and substance addiction disorder. *Id.* But the ALJ concluded these impairments, either individually or in combination, were not severe. *Id.* Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 33.

Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review. *Id.* at 12. The ALJ's decision stands as the final decision of the Commissioner.

2

# III.
# **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

//
//

# IV.

# DISCUSSION

Plaintiff argues the ALJ's step two finding that his mental impairment was non-severe was not supported by substantial evidence. P. Mem. at 4-11. Plaintiff particularly argues the ALJ erred in rejecting the opinion of examining physician Dr. Marcel Van Eerd, and instead relying on other opinions of record, and in failing to further develop the record.

At step two, the Commissioner considers the severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii).[1] "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). In order for a claimant to be considered disabled, the severe impairment must have lasted or be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909. "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id*. (citation and quotation marks omitted). Nonetheless, "[t]he claimant [still] carries the initial burden of proving a disability." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

To establish a medically determinable impairment, it must be supported by objective medical evidence, not only the plaintiff's statements. *See* 20 C.F.R. § 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); *see also Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005). "[A]pplying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically

---

[1] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

4

severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

The ALJ here recognized plaintiff's impairments, including affective mood disorder and substance addiction disorder, but concluded they were non-severe. In making this determination, the ALJ "considered the four broad functional areas set out in the disability regulations for evaluating mental disorders," which are known as the "paragraph B" criteria. AR at 33. The four areas of function, in which the ALJ must rate the degree of functional limitation, are: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(3). If there are no more than mild limitations in the first three areas and no episodes of decompensation, the mental impairments are generally found to be not severe. 20 C.F.R. § 416.920(d)(1). The ALJ here found plaintiff had no functional limitation in daily living, only mild impairment in social function, no limitation in concentration, persistence, or pace, and no episodes of decompensation of extended duration. AR at 33. He consequently concluded plaintiff did not suffer from a severe mental impairment. *Id.*

Plaintiff does not dispute the lack of evidence of any decompensation episode, but does dispute the other findings. In finding plaintiff had no limitations in his activities of daily living, the ALJ noted plaintiff takes care of his young son without assistance, is capable of self-care, and has reported little difficulty. *Id.* Plaintiff argues that a general reference to childcare is not good reason to find him not disabled (P. Mem. at 11); however, that was not the ALJ's analysis. The ALJ made a specific finding that the record reflected no problems in activities of daily living, and this finding is supported by substantial evidence in the record. This includes evidence that plaintiff watches after his two-year-old son for up to eight hours a day, does chores around the home, cares for his own personal hygiene, and occasionally drives. AR at 48-51, 151-57, 184-92, 240, 268.

5

The ALJ found that, based on plaintiff's positive responses to treatment, his social functioning was only mildly impaired. *Id.* at 33. The ALJ specifically cited to plaintiff's treatment records from his time in prison in 2015, which did not indicate severe mental limitations. *Id.* at 31, 33; *see id.* at 294-352. For example, a January 10, 2015 mental status exam was normal in all respects, including having intact insight and social judgment. *Id.* at 304. And notes from a March 4, 2015 exam showed plaintiff was experiencing only minimal symptoms when medicated. *Id.* at 337; *see also Warre v. Comm'r. of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining...SSI benefits.").

In the third functional area, concentration, persistence, and pace, the ALJ found plaintiff had no limitation because his mental status examinations documented no such problems. AR at 33. The ALJ again cited to plaintiff's prison records, specifically, the normal findings at his January 10, 2015 and April 20, 2015 exams. *See id.* at 304, 333.

The ALJ's determination that plaintiff had no more than mild limitations in any of the four functional areas, and did not have a severe mental impairment, was also supported by the opinions of the State agency medical consultants (at the initial as well as reconsideration levels of review), Dr. K. Loomis and Dr. Kim Morris, and by the opinion of examining physician Dr. Robin Rhodes Campbell. AR 61-62, 70-71, 266-71. Thus, there was substantial evidence in the record to support the ALJ's step two finding.

Plaintiff argues, however, that the ALJ should have instead relied on the Dr. Van Eerd's opinion, and should have further developed the record. The court thus turns to those issues.

**A.     <u>The ALJ Properly Weighed the Medical Opinions</u>**

Plaintiff argues the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting the opinion of Dr. Van Eerd

while relying on those of Dr. Campbell and the State Agency physicians.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c), (e), 416.926(c), (e); *Lester*, 81 F.3d at 830. "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416. 927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

Dr. Van Eerd, a psychologist, examined plaintiff on February 16, 2011. AR

at 239. Plaintiff appeared neat and appropriately dressed, but with resentful mannerisms and avoidant in his interactions. *Id*. at 240. Plaintiff was oriented as to time, place, person, and situation, but wrong about the day of the week and date. *Id.* at 242. He was unable to recall three words after three minutes, unable to correctly provide the alphabet, unable to spell "world" backwards, and made errors in serial sevens and arithmetic. *Id.* He also had poor responses to basic informational inquiries, vocabulary, proverbs, social awareness, and social judgment. *Id.* Dr. Van Eerd diagnosed plaintiff with depression, a learning disability, and a history of head injury. *Id.* Dr. Van Eerd found plaintiff's affect was labile with depressed mood, his pace was very slow, and his intellectual functioning was below average. *Id.* He opined plaintiff would likely have difficulty accepting supervision and remembering and completing simple tasks. *Id.* He recommended job training. *Id.*

The ALJ gave Dr. Van Eerd's opinion little weight for two reasons: first, it was based on a one-time examination of plaintiff with the opportunity to review only limited evidence in the record; and second, it contrasted sharply with the other medical evidence of record. *Id.* at 31.

Plaintiff argues the first reason given was not specific and legitimate because the ALJ accepted Dr. Campbell's conclusions, which were also based on a one-time examination. Plaintiff is correct in part. The mere fact that Dr. Van Eerd examined plaintiff only once is not a legitimate basis to reject his opinion. But the ALJ noted that not only did Dr. Van Eerd examine plaintiff only once, but the examination occurred almost a year before the alleged onset date and more than two years before the application date, and Dr. Van Eerd consequently had no opportunity to review the bulk of the evidence in the record, which was generated after his February 2011 exam. This is at least a basis to view Dr. Van Eerd's opinion with caution, if not an adequate reason by itself to reject the opinion.

The second reason given, however, was specific and legitimate and

8

supported by substantial evidence. As discussed above, the other evidence in the record (which was not available to Dr. Van Eerd) shows plaintiff's mental status findings were largely normal, with plaintiff experiencing only minimal symptoms when medicated.

Plaintiff contends that his low Global Assessment of Functioning ("GAF") scores, which ranged from 40 to 68, denote "serious symptoms." P. Mem. at 8; *see* AR at 252, 271, 272, 274, 275, 277, 305, 308, 310, 312, 314, 324. But the ALJ specifically discounted the value of the GAF scores, finding they "reveal only snapshots of impaired and improved behavior, provide nothing by way of function-by-function capacity or limitations, and do not provide a reliable longitudinal perspective of the claimant's mental functioning." AR at 32. Indeed, an ALJ is not required to consider a GAF score "because a GAF score is merely a rough estimate of an individual's psychological, social, or occupational functional used to reflect an individual's need for treatment, but it does not have any direct correlative work-related or functional limitations." *Hughes v. Colvin*, 599 Fed. Appx. 765, 766 (9th Cir. 2015) (citing *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998)); *see also Johnson v. Colvin*, 2015 WL 1839641, at *4 n.3 (M.D. Tenn. Apr. 21, 2015) (noting "the fifth edition of the [DSM] eliminates the GAF scoring system completely and that "[t]he SSA explicitly advises ALJs there is no correlation between GAF ratings and the B criteria in the mental disorders listings") (citation and internal quotation marks omitted).

The State Agency physicians, Drs. Loomis and Morris, reviewed far more records than Dr. Van Eerd, including records from the relevant period, reaching up through early 2014 in Dr. Morris's case. *See* AR at 57-59, 67-68. As discussed above, they found plaintiff had no more than mild limitations and did not have a severe mental impairment. *Id.* at 61-62, 70-71. The ALJ gave their opinions great weight because they were consistent with the objective medical evidence. *Id.* at 31. This was proper, for the same reason it was proper for the

ALJ to reject Dr. Van Eerd's opinion on that basis.

The ALJ also cited to the opinion of examining physician Dr. Campbell to support his finding that plaintiff did not have a severe impairment. This too contradicted Dr. Van Eerd's opinion and supported the ALJ's determination. *See id.* at 266-71. While Dr. Campbell found plaintiff's cognitive function to be extremely low, she cautioned that "these test results are unlikely to be an accurate representation of [plaintiff's] current cognitive and psychological functioning" because plaintiff gave a very poor effort during testing, and appeared to be exaggerating and dissimulating. *Id.* at 268, 270. Even so, Dr. Campbell found plaintiff largely unimpaired. *Id.* at 271.

In sum, the ALJ gave a specific and legitimate reason supported by substantial evidence for discounting Dr. Van Eerd's opinion, and properly weighed the other medical evidence, which supported his determination that plaintiff did not suffer from a severe mental impairment.

**B.     The ALJ Did Not Err in Not Further Developing the Record**

Plaintiff additionally contends that the ALJ did not fully and fairly develop the record as he is required to, especially in light of the fact that plaintiff appeared without counsel at the hearing. P. Mem. at 10.

Even when a claimant is represented by counsel, an "ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983) (citation omitted). Yet plaintiff has the burden of "furnish[ing] medical and other evidence that [the Commissioner] can use to reach conclusions about [plaintiff's] medical impairments(s)." *Mayes*, 276 F.3d at 459 (quoting 20 C.F.R. § 404.1512(a)). Plaintiff may not shift his burden of production to the ALJ. *Id.*; *see* 42 U.S.C. § 423(d)(5).

The duty to further develop the record is triggered when the record is ambiguous or otherwise inadequate. *See Webb*, 433 F.3d at 687; *see also Mayes*,

276 F.3d at 459-60 (ALJ has a duty to develop the record further only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"). Generally, the ALJ fulfills this duty by making a reasonable attempt to obtain additional medical evidence from the claimant's treating sources, ordering a consultative examination where the medical evidence is incomplete or unclear, or subpoenaing the claimant's physicians or their records. *Tonapetyan*, 242 F.3d at 1150. When there is evidence of a mental impairment or the claimant is unrepresented, this duty to develop is "heightened." *Id.*

Here, there was no ambiguity that warranted further development of the record. Plaintiff points to his testimony at the November 2015 hearing that he had recently begun treatment with Dr. Richard Chenik at High Desert Family Health Clinic, whom plaintiff had since twice following his July 2015 release from prison. *See* AR at 47. Those treatment notes are not in the record, and plaintiff argues the ALJ should have requested them before rendering his decision. Yet as defendant points out, given that there are treatment notes in the record up through April 2015 that support a finding of no severe impairment, and given that plaintiff had the burden to establish disability for a continuous twelve-month period, there was no reason for the ALJ to believe that Dr. Chenik's treatment records (which could have begun only a few months before the ALJ's decision) would provide a basis for a different determination. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (no duty to further develop record based on physician's examination more than a year after expiration of insured status).

Accordingly, substantial evidence in the record supported the ALJ's step two determination, and the ALJ had no duty to further develop the record.

# V.
# **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: March 25, 2019

SHERI PYM
United States Magistrate Judge